*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1990**

State of Minnesota,
Respondent,

vs.

Patrick Perry Paczkowski,
Appellant.

**Filed December 14, 2015
Affirmed
Reyes, Judge**

Wabasha County District Court
File No. 79CR13455

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Karen Kelly, Wabasha County Attorney, Wabasha, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

On appeal following his conviction of fifth-degree possession of a controlled substance, appellant argues that (1) the evidence was insufficient to prove that he

constructively possessed the pipe containing methamphetamine and (2) the district court committed reversible error by admitting evidence that he had smoked methamphetamine three days prior to his arrest.  We affirm.

**FACTS**

On May 22, 2013, H.P., the owner of a farm located near Plainview, Minnesota, called 911 to report two people rummaging through some sheds on her property.  During the call, she stated "now they're both smoking drugs."  Officers testified that when they arrived at the farm, appellant Patrick Perry Paczkowski was sitting in the driver's seat of a car, owned by his roommate.  His friend, M.V., was sitting in the front passenger seat.  A Pyrex glass pipe, with a white, powdery substance in its bowl, was in plain view on the gear-shift box located between the two seats.

At the scene, a police deputy conducted separate, recorded interviews with appellant and M.V.  In his recorded interview, appellant told the deputy that M.V. had previously lived on the farm, and she had obtained permission from the owners to return that day to retrieve some of her property.  At first, appellant denied knowing anything about the pipe in the car, but later he said he thought it was M.V.'s.  He told the deputy they had not used the pipe, and he did not know how the substance got into the pipe.  When asked if he smokes methamphetamine, appellant answered, "No."  However, he did acknowledge that he had smoked it "a long time ago."

In M.V.'s recorded interview, her version of the day's events was different.  M.V. told the deputy eight times that the pipe did not belong to her and that it was appellant's.  The deputy confronted appellant with M.V.'s version of events and recorded a second

2

interview. During this interview, appellant reiterated his previous story. But, this time, he admitted the last time he smoked methamphetamine "was probably like three days ago." After the pipe field-tested positive for the presence of methamphetamine, the deputy arrested both appellant and M.V.

The deputy testified that after he finished booking M.V., he walked past appellant in the holding cell to get to the garage where he parked his squad car. While he was waiting for the door to open, the deputy wished him well, or something to that effect. In response, appellant told the deputy that the pipe was his. The deputy did not reply and continued into the garage.

Appellant was charged with fifth-degree possession of a controlled substance. A jury trial was held. At trial, a forensic scientist testified that she analyzed the pipe contents and found that it was methamphetamine.

M.V. testified that the pipe was hers and that she had previously entered a plea of guilty to possession of methamphetamine arising from this incident. She explained that she had initially told the deputy that the pipe was not hers because she was afraid. She testified that appellant never used or touched the pipe that day. However, she also testified that the pipe showed up on the gear-shift box at some point when appellant was alone in the car. Appellant testified that when the officers arrived at the scene, he was not in the car. He also denied possessing any methamphetamine or the pipe that day.

The jury found appellant guilty of fifth-degree possession of a controlled substance. The court sentenced him to the presumptive 13-month stayed sentence, placed

him on probation for ten years, and required him to serve 180 days in jail. This appeal

follows.

## DECISION

**I.** **The evidence in the record is sufficient for the jury to have reasonably concluded that appellant constructively possessed the methamphetamine.**

Appellant first argues that there is insufficient evidence to support the jury's

verdict. When presented with a claim of insufficient evidence, this court's review is

limited to a careful analysis of the record to determine whether the evidence presented at

trial, viewed in a light most favorable to the conviction, is sufficient to allow the jury to

reach the verdict that it did. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). In doing

so, this court must assume "the jury believed the state's witnesses and disbelieved any

evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

To obtain a conviction for possession of a controlled substance, the state had to

prove that appellant possessed the substance and knew the nature of the substance. *State

v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975). Appellant challenges only

the possession element. The parties agree that this is a constructive-possession case

because the methamphetamine was found on the gear-shift box of the car.

Constructive possession occurs when a strong inference exists "that the defendant

at one time physically possessed the substance and did not abandon his possessory

interest in the substance but rather continued to exercise dominion and control over it up

to the time of the arrest." *Id.* at 105, 226 N.W.2d at 610. In order to prove constructive

possession, the state had to show

4

(a) that the police found the substance in a place under [appellant's] exclusive control to which other people did not normally have access, or (b) that, if police found it in a place to which others had access, there is a strong probability (inferable from other evidence) that [appellant] was at the time consciously exercising dominion and control over it.

*Id.* at 105, 226 N.W.2d at 611.

A conviction can rest on direct or circumstantial evidence. *See, e.g., State v. Silvernail*, 831 N.W.2d 594, 598-600 (Minn. 2013); *State v. Flowers*, 788 N.W.2d 120, 133-34 (Minn. 2010). Here, the state offered direct evidence as well as a combination of direct and circumstantial evidence to prove that appellant constructively possessed the methamphetamine.[1] The direct evidence offered by the state included the deputy's testimony that appellant admitted to him that the pipe was his and the forensic scientist's testimony that the contents of the pipe were methamphetamine. Since appellant admitted it was his pipe and methamphetamine was in the pipe, there is a strong inference from the direct evidence that appellant was exercising dominion and control over the methamphetamine.

Appellant argues that his admission to the deputy is "quite suspect" because it stands in "stark contrast" to the remaining facts of the case. Appellant specifically

---

[1] In *State v. Porte*, we stated that if the state's direct evidence, by itself, is sufficient to prove each element of the charged offense, we apply the traditional standard of review; but if the state's direct evidence, by itself, is insufficient to prove each element of the charged offense, and the state also relies on circumstantial evidence to prove one or more elements, the circumstantial-evidence standard of review is applicable. 832 N.W.2d 303, 309 (Minn. App. 2013) (applying circumstantial-evidence standard of review because state introduced insufficient direct evidence of possession of requisite amount of controlled substance); see also *State v. Slayers*, 858 N.W.2d 156, 161 (Minn. 2015) (applying traditional standard of review because state introduced sufficient direct evidence of possession of firearm).

highlights M.K.'s testimony that the pipe was solely hers and her guilty plea. However, the jury heard this evidence and rejected it. *See Moore*, 438 N.W.2d at 108 (stating that we must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary."). Further, because constructive possession need not be exclusive, but may be shared, M.K.'s guilty plea does not preclude a finding that appellant also possessed the pipe. *See State v. Smith*, 619 N.W.2d 766, 770 (Minn. App. 2000) (citations omitted), *review denied* (Minn. Jan. 16, 2001). Accordingly, we conclude there is direct evidence sufficient to support appellant's conviction of fifth-degree possession of a controlled substance.

Even under the heightened-scrutiny standard we apply for convictions based on circumstantial evidence or a combination of direct and circumstantial evidence, we conclude that the evidence in the record is sufficient to support appellant's conviction. *See State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). Under the circumstantial-evidence standard, we apply a two-step analysis. *Silvernail*, 831 N.W.2d at 598. We first identify the circumstances proved, giving deference to the fact-finder and construing the evidence in the light most favorable to the verdict. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). Under this step, we assume that the fact-finder accepted the state's version of events and rejected the defendant's version. *See Al-Naseer*, 788 N.W.2d at 473. The second step requires this court "to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypotheses except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotation omitted). "We examine independently the reasonableness of all inferences that might be drawn from the circumstances proved,

6

including the inferences consistent with a hypothesis other than guilt." *Id.* (quotations omitted).

Taken in the light most favorable to the verdict, the evidence establishes the following circumstances: (1) H.P. reported that she saw appellant and M.V. smoking drugs; (2) when the officers arrived at the farm, appellant was sitting in the driver's seat of the car, and M.V. was sitting in the passenger seat; (3) a Pyrex glass pipe, with a white substance in its bowl, was in plain view on the gear-shift box of the car; (4) when interviewed at the farm, M.V. told the deputy that the pipe was appellant's; (5) appellant admitted to the deputy that the pipe was his; (6) the pipe was consistent with those used to smoke drugs; (7) the white substance tested positive for methamphetamine; and (8) M.V. testified at trial that the pipe appeared on the gear-shift box sometime when appellant was alone in the car. We conclude that these circumstances proved are consistent with the conclusion that appellant possessed the pipe with methamphetamine, and inconsistent with any rational hypotheses except that of guilt.

II. **The district court did not abuse its discretion by admitting the portion of appellant's recorded interview in which he admitted to using methamphetamine three days before his arrest.**

At the beginning of the trial, appellant requested that the court redact the portion of his recorded interview with the deputy in which he admitted to smoking methamphetamine three days before his arrest. He argued the statement was *Spreigl* evidence and was highly prejudicial. The district court denied appellant's request, finding that it was not *Spreigl* evidence and that the probative value of his statement far outweighed the prejudicial impact. In making this determination, the district stated that

7

since the key issue in this case was not whether there was methamphetamine found but rather who possessed it, the admissions made by appellant and M.V. that they had recently used methamphetamine was more probative then prejudicial. The court further stated that it was not prejudicial because the jury would know that these two individuals were in a car that contained methamphetamine in a smoking device, suggesting recent ingestion of the substance.

"Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted). An erroneous "evidentiary ruling will not be reversed unless the error substantially influenced the jury's verdict." *State v. Carridine*, 812 N.W.2d 130, 141 (Minn. 2012).

Evidence of prior bad acts or criminal convictions is not admissible to prove the character of a person to show that he or she acted in conformity with that character. *See* Minn. R. Evid. 404(b) (providing for the admissibility of prior bad acts evidence only to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident); *State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). But references to prior bad acts may be admissible to show the context of a statement. *See State v. Czech*, 343 N.W.2d 854, 856-57 (Minn. 1984) (holding references to other crimes was relevant to show context of conversations with undercover agents). In these instances, "[t]he trial court must balance the probative value of the evidence against its

8

potential for unfair prejudice." *State v. Stafford*, 404 N.W.2d 918, 921 (Minn. 1987). "If there is doubt as to the balance, the evidence should be excluded." *Id.*

In this case, appellant's statement was not admitted for the improper purpose of showing that he acted in conformity with his bad character. That is, it was not admitted to cause the jury to infer that since appellant had previously used methamphetamine, he possessed the methamphetamine in this instance. Rather, the statement was admitted to show the context of appellant's entire recorded interview with the deputy. When first questioned by the deputy if he smoked methamphetamine, appellant answered, "No." After subsequent questioning, he acknowledged he had smoked it "a long time ago." Shortly thereafter, appellant told the deputy the last time he smoked "was probably, like three days ago." If the statement had been redacted, the jury would have been left to believe that the last time appellant smoked methamphetamine was "a long time ago." Further, it showed that appellant made several inconsistent statements and redactions in his interview, which could impact the credibility of his testimony. Therefore, we conclude that the district court did not abuse its discretion by admitting appellant's statement that he smoked methamphetamine three days ago as it provided context to his statements.

Moreover, the admission of the statement did not substantially influence the jury's verdict. The statement did not play a significant role in persuading the jury to conclude that appellant possessed the methamphetamine because other sufficient evidence supported that conclusion. Appellant admitted to the deputy that the pipe containing methamphetamine was his. Further, appellant was seen smoking drugs, and he was found

seated directly next to the pipe.  Finally, M.V. told the deputy that the pipe belonged to appellant.

**Affirmed.**